UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-190-02 (RBW) |
| | : | |
| v | : | |
| | : | |
| FREDERICK BUSH | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to the mid-range of the applicable guideline range.

**I.     BACKGROUND**

The defendant was charged in a superceding indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. Section 922(g)(1), and Distribution of Cocaine, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).  On October 6, 2005, the defendant pled guilty to Distribution of Cocaine, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).

In entering a plea of guilty, the defendant admitted to the following:

On May 19, 2005, Dale Sutherland, a Metropolitan Police Department undercover officer, met with co-defendant Kenneth McDermon to purchase firearms which McDermon had purchased in Ohio.  McDermon met Sgt. Sutherland at West Virginia and Fenwick Streets, NE, in Washington, DC, at approximately 10:00 pm.  McDermon arrived in a white Chevy Blazer,

accompanied by Frederick Bush. The defendant and Frederick Bush went to the rear of the vehicle and opened the trunk, from which McDermon removed several labeled manufacturer's pistol boxes, and one unboxed firearm in a holster. Bush then got back into the white Chevy Blazer, and McDermon approached the undercover vehicle. McDermon handed the boxes and the holstered weapon to Sgt. Sutherland, who opened each box and examined the firearms. McDermon provided the following firearms to Sgt. Sutherland: a CAI 9 mm pistol, a Bersa 9 mm pistol, three Ruger 9 mm pistols, one Taurus .357 revolver, and one Kel-Tec 9 mm pistol.

McDermon and Sgt. Sutherland then discussed the purchase of cocaine. McDermon returned to the white Chevy blazer and opened the passenger door and spoke to Bush. Bush handed McDermon a small plastic bag containing 2 grams of cocaine. McDermon walked back over to Sgt. Sutherland and gave him the cocaine. Sgt. Sutherland gave the arrest signal, and members of the MPD moved in and arrested McDermon and Bush.

The defendant also admitted that at the time he committed this offense, he had a felony criminal conviction for uttering counterfeit currency, aiding and abetting, in criminal case number CR00026-001 in United States District Court for the Eastern District of Virginia.

## II.    SENTENCING CALCULATION

### A    Statutory Minimums and Maximums

Pursuant to 21 U.S.C. Section 841(b)(1)(C), the crime of Distribution of Cocaine carries a maximum sentence of twenty years of imprisonment, a $ 1,000,000 fine, and up to three years of supervised release.

### B.    Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Report ("PSR") calculates the

defendant's total offense level at 10.  See PSR ¶ 19.  (This calculation contemplates a two level departure for acceptance of responsibility.  Pursuant to 3E1.1 of the United States Sentencing Guidelines, the defendant is not eligible for the third departure point.)  The PSR calculates the defendant's criminal history as Category II.  See PSR ¶ 27.  Therefore, the guideline range for the defendant is calculated at 8 to 14 months in Zone C.  See PSR ¶ 54.  For the reasons set forth, infra Section III of this Memorandum, the government respectfully recommends that the Court sentence the defendant at the middle of the Guidelines range calculated in the PSR.

### III. GOVERNMENT'S RECOMMENDATIONS

#### A. Application of the Federal Guidelines post-Booker

Pursuant to the plea agreement between the government and the defendant, it is the government's position that the Court should impose a sentence at the low end of the guidelines range.  In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).  Booker, 2005 WL 50108, at *16. However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime.  Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in

the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at *24.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at *27 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 2005 WL 50108, at *26; see id. at *27 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by

Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, at *24. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the

correctly calculated range to a court of appeals reasonableness review.  See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

   Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances.  This is so, said the court in United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at *1.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent –

in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report.

  B. Basis for Government's Sentencing Recommendation

The defendant has received a substantial benefit from this plea, and all the leniency he should receive is encompassed in the plea. The defendant received a two point decrease in his offense level as a result of his acceptance of responsibility, and the government will seek to dismiss his additional charge at sentencing. Accordingly, the government believes that a term of incarceration at the middle of the prescribed Guideline range is appropriate and will give both the government and the defendant the benefit of the bargain negotiated.

The defendant is responsible for selling cocaine which he had every reason to believe would be introduced into the community, and he must be held accountable for his actions. This Court is well aware of the damage caused in this community by illegal narcotics. The defendant has no excuse for his criminal behavior. He was not in a desperate situation - he is an educated man who was gainfully employed at the time he committed this crime. The defendant is a high school graduate, and attended college for two years.

The defendant does not have an extensive criminal history, but he has had consistent run-ins with the law over the past five years, starting with a federal conviction in Virginia for passing counterfeit currency. After that offense, the defendant was convicted for driving while

intoxicated in 2001 and 2003. He was also convicted for driving without a license in 2003. The defendant was convicted of five additional traffic offenses between 1998 and 2003. The traffic offenses, combined with the counterfeiting conviction and the sale of cocaine, show a dangerous pattern of disregard for the law. The defendant obviously did not learn from his past mistakes, and has not changed his behavior. Instead, he engaged in even more egregious conduct, that is, selling cocaine in Washington, D.C.

## IV.    CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to the middle of the applicable guideline range for the offense of Distribution of Cocaine.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058


Catherine K. Connelly
Assistant United States Attorney
Narcotics Section, Mass. Bar No. 649430
555 4th Street, N.W. #4844
Washington, DC 20001
Phone: 616-3384
Fax: 353-9414

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Anthony Martin, this 12th day of January, 2006.

                                                  _____
                                                 Catherine Connelly
                                                 Assistant United States Attorney